**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

TAMMY M. McREYNOLDS, )
)
                 Plaintiff, ) **CIVIL ACTION**
)
v. ) No. 08-1151-MLB
)
HAWKER BEECHCRAFT CORP., )
)
                 Defendant. )
)

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant Hawker Beechcraft Corporation's motion for summary judgment. (Doc. 73). The motion has been fully briefed and is ripe for adjudication. (Docs. 83, 88, 94). The motion is granted for the reasons stated more fully herein.

Plaintiff, Tammy McReynolds, brings an interference/entitlement claim against her former employer, Hawker Beechcraft Corporation, under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Plaintiff further alleges that defendant terminated her in retaliation for filing a workers compensation claim in violation of Kansas law.

**I. FACTS**

The following facts are either uncontroverted or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)). To the extent relevant, the factual disagreements between the parties will be noted.

Defendant, formally known as Raytheon Aircraft Company, is a business that manufactures special mission aircraft. Defendant rehired plaintiff on July 10, 2006, as an Sheet Metal Assembler.[1] Plaintiff was periodically absent in 2006 and 2007.[2]

On April 26, 2007, plaintiff was at a Step II attendance level pursuant to defendant's revised attendance policy.[3] Plaintiff injured her left shoulder on August 30, which she reported on September 13. Defendant sent plaintiff to Dr. Jeanette Salone for treatment.

On October 18, plaintiff woke up and could not move her left shoulder. Plaintiff, who resides in Kingman, Kansas, went to her personal physician, Dr. Steve Grillot, for treatment. Dr. Grillot's

---

[1] Plaintiff first began working for defendant on November 10, 2000, and was laid off on December 3, 2001.

[2] Plaintiff's attendance record is not in dispute and her unexcused absences prior to October 18, 2007, are not in dispute for purposes of this lawsuit.

[3] Defendant's revised attendance policy is as follows:

> [A]n unexcused absence of one hour or less would result in one infraction. An unexcused absence of somewhere between one and four hours would result in two infractions. A full day absence where proper notification was not provided to the company would result in four infractions. An employee who incurred four infractions within a 180-day period would receive a Step 1 written reprimand. An employee who incurred four additional infractions in a 180-day period within one year of receiving a Step 1 written reprimand would receive a Step 2 written reprimand. An employee who incurred four additional infractions in a 180-day period within one year following receipt of a Step 2 written reprimand would receive a Step 3, which was termination. Under the revised policy, termination would also occur if an employee was absent for five or more consecutive working days without a valid reason, even if the absence was properly reported. Termination was also the consequence if an employee failed to properly notify the company of their absence on three non-consecutive working days in a rolling twelve-month period. (Doc. 70 at 5-6).

office is in Kingman.  Plaintiff was unable to drive to Dr. Salone's Wichita office for treatment.  Dr. Grillot prescribed physical therapy and gave plaintiff work restrictions.  Dr. Grillot told plaintiff that she needed time to heal, but he did not recommend time off from work on either plaintiff's prescription or health certification.  Plaintiff does not remember if Dr. Grillot told her to take time off from work. (Doc. 83 at 6).

Defendant contends that plaintiff called Wanda Roehl, the administrator of defendant's workers compensation program, on October 18.  Plaintiff controverts this fact because Ms. Roehl does not recall talking with plaintiff.  Ms. Roehl testified at her deposition that she would not have excused plaintiff from work on October 18 because Dr. Grillot was not the authorized treating physician.  Additionally, any physical therapy would have needed to be approved by Dr. Salone. (Doc. 83 at 7).

The following day, October 19, plaintiff went to a scheduled appointment with Dr. Salone.  Dr. Salone also gave plaintiff work restrictions, but told her to wait to have physical therapy until she had a MRI.  Dr. Salone did not prescribe time off from work.  However, plaintiff contends that Dr. Salone informed plaintiff that she would give plaintiff time off, but if she did, defendant would no longer give her patients.  (Doc. 83 at 7).

Plaintiff did not go to work on October 22.  Plaintiff did not see a physician or receive any medical treatment that day.

On October 26, plaintiff submitted a FMLA request for her absences on October 18, 19, and 22 along with a certification of health care provider that was signed by Dr. Grillot.  Dr. Grillot did

-3-

not note that plaintiff had a serious health condition or detail any facts supporting the existence of a serious health condition. Dr. Grillot indicated that the probable duration of plaintiff's condition was "unknown." (Doc. 85, exh. 24).

On October 26, defendant denied plaintiff's request for FMLA "because the documentation she had submitted did not indicate the existence of a serious health condition." (Doc. 73 at 13). Defendant did not request additional documentation.[4] Plaintiff was assessed a total of six attendance infractions for the three days. Plaintiff was issued a Step III with two infractions pursuant to defendant's attendance policy.[5]

On October 29 through November 5, plaintiff's son was hospitalized for febrile seizures. Plaintiff called in prior to the time her shift began on October 29, 30, and 31. On November 1, plaintiff called in at approximately 8:21 a.m. Plaintiff's shift started at 7:00 a.m. Plaintiff was issued four attendance infractions pursuant to defendant's policy requiring advance notification of an absence unless there is an emergency or the employee has written approval of FMLA leave.

On November 7, plaintiff requested FMLA leave for her absences on October 29 through November 5. On November 12, defendant notified plaintiff that the documentation she submitted was insufficient and

---

[4]Defendant's administrator of FMLA leave, Ms. Nita Long, "did not request additional information from plaintiff[,] 'because [she] didn't need more information.'" (Doc. 83 at 21).

[5]"[P]laintiff had incurred six infractions within a 180-day period within a year following the Step 2 written warning." (Doc. 73 at 14).

gave plaintiff until November 27 to provide additional documentation to justify FMLA leave.

Plaintiff submitted a revised FMLA request and health care provider certification on November 27. On November 29, defendant approved plaintiff's FMLA request for October 29 through November 5. However, plaintiff still had the four attendance infractions as a result of her late notice on November 1. On November 29, plaintiff was at a Step III with six attendance infractions.

On December 20, plaintiff was absent from work because her son was ill. Plaintiff submitted a FMLA request on December 21. Plaintiff did not attach a physician's certificate to her FMLA request. Defendant gave plaintiff until January 19, 2008, to provide a doctor's note stating that plaintiff's son was treated on December 20, 2007. Plaintiff did not submit any additional information by January 19, 2008, and plaintiff was given two attendance infractions for her December 20, absence.

Plaintiff was absent on January 23, 24, and 25, 2008. "Plaintiff was terminated on January 28, 2008, for violation of [defendant's] attendance policy." (Doc. 73 at 18).

## II. SUMMARY JUDGMENT STANDARDS

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a

rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**III. ANALYSIS**

**A. Plaintiff's FMLA Claim**

Plaintiff brings a claim for FMLA interference/entitlement pursuant to 29 U.S.C. § 2615(a)(1). Plaintiff specifically challenges the denial of her requests for FMLA leave on October 18, 19, and 22, November 1, and December 20, 2007, which resulted in the attendance infractions and subsequent termination of plaintiff.[6] The dates and reasons for plaintiff's absenteeism are not in dispute.

Defendant contends that it did not interfere with plaintiff's right to FMLA leave. Defendant asserts that plaintiff was terminated because she failed to follow defendant's attendance policy and failed to submit the proper documentation with her FMLA requests.

---

[6]Plaintiff is not challenging the attendance infractions for her absences on October 6, November 14, and December 1, 2006, and April 25, 2007.

-6-

The FMLA affords a qualified employee twelve weeks of unpaid leave each year for serious health problems that prevent the employee from performing his or her job. 29 U.S.C. § 2612(a)(1)(D).

> To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.

Jones v. Denver Public Schools, 427 F.3d 1315, 1319 (10th Cir. 2005). If a plaintiff establishes interference with his FMLA rights, then the employer bears the burden of proof on the third element. **Id. at 1172.**

An employer may require the employee to provide the requisite medical certification before he or she is entitled to FMLA leave. 29 U.S.C. § 2613(a); Myers v. Dolgencorp, Inc., 2006 WL 408242, at *6 (D. Kan. Feb. 15, 2006).

> An employer may require that an employee's leave to care for the employee's covered family member with a serious health condition, or due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee or the employee's family member.

29 C.F.R. § 825.305(a). An employer may also require the employee to comply with its notice requirements. Allender v. Raytheon Aircraft Co., 339 F. Supp.2d 1196, 1206 (D. Kan. 2004).

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in

-7-

> the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R. § 825.303(c)

Defendant does not dispute that plaintiff utilized FMLA leave and further that any reasonable employee would be adversely affected by termination of employment. Defendant claims that plaintiff cannot meet the third prong because her termination was in response to her failure to comply with defendant's attendance policy, not the exercise of her FMLA rights.

On October 18, plaintiff visited Dr. Grillot for pain in her left shoulder. Plaintiff did not have an appointment. On October 19, plaintiff went to her scheduled appointment with Dr. Salone. Both Dr. Grillot and Salone prescribed work restrictions. Dr. Grillot prescribed physical therapy, but Dr. Salone told plaintiff to wait on physical therapy until a MRI was performed. Neither doctor recommended that plaintiff remain off work. (Doc. 74, exh. 6 at 108-09). Plaintiff testified at her deposition that Dr. Salone would have given her time off, but defendant would not give Dr. Salone more patients if she recommended time off for plaintiff. (Doc. 74, exh. 6 at 109).

Plaintiff submitted a request for FMLA leave for her October 18, 19, and 22 absences. Plaintiff provided a medical certificate signed by Dr. Grillot. Dr. Grillot did not check the paragraph stating that plaintiff did not have a serious health condition. However, he did

not provide any other information regarding plaintiff's injury either. On October 26, 2007, plaintiff was issued a Step III with two additional attendance infractions.

The court does not address whether the October 18, 19, and 22 absences meet the criteria of a "serious health condition" and/or whether defendant should have permitted plaintiff to submit proper medical certificates. Even if plaintiff's October absences would have been FMLA approved, she still received six additional attendance infractions for her November 1 and December 20 absences after being at a Step II attendance level. According to defendant's attendance policy, plaintiff could have received a Step III attendance infraction and termination without the six infractions from her absences in October.[7]

On November 1, 2007, defendant claims that plaintiff failed to properly notify her supervisor that she would be absent from work. Plaintiff admits that she called in at 8:21 a.m., which is more than 30 minutes after her 7:00 shift began. Plaintiff responds that defendant knew that her son was in the hospital and that she received verbal FMLA approval. Plaintiff's request for FMLA leave for October 29 through November 5 was approved on November 7. Therefore, plaintiff contends that she should not have received four attendance infractions for not calling in her absence before 8:21 a.m. on November 1.

---

[7]Plaintiff was issued a Step II attendance infraction on April 26, 2007. She received four additional attendance infractions within 180 days within one year of receiving the Step II infraction. Pursuant to defendant's attendance policy, defendant could have terminated plaintiff after her November 1 absence.

-9-

> Defendant's attendance policy provides:
>
> 6.5 An employee taking leave pursuant to the Family and Medical Leave Act or standard Medical leave of Absence is required to properly report each absence until they receive official written documentation from the Company approving the leave of absence and detailing the specific end date of the leave.

(Doc. 83 at 10). On November 1, "plaintiff – for whatever reason – called in her absence an hour and 21 minutes after her shift started." (Doc. 83 at 23). Plaintiff does not contend that she received <u>written</u> documentation approving FMLA leave prior to November 1. Nor does plaintiff contend that unusual circumstances or an emergency prevented her from calling in prior to her shift. "[I]n the Tenth Circuit, 'an employee cannot seek FMLA relief in the event of his noncompliance with his employer's specific notice requirements absent an allega[tion] that his physical condition was such that he could not comply with defendant's reasonable notice requirements.'" <u>Allender</u>, 339 F. Supp.2d at 1206. Therefore, it was appropriate for defendant to issue four attendance infractions in accordance with its attendance policy.

Plaintiff also contends that defendant interfered with her right to take FMLA leave for her December 20 absence. However, plaintiff failed to submit a doctor's note confirming that her son received medical treatment on December 20. Defendant gave plaintiff additional time to provide the requisite documentation to justify FMLA leave, but none was ever provided by plaintiff. Plaintiff was issued two attendance infractions for her December 20 absence.

The court finds that defendant did not interfere with plaintiff's right to FMLA leave on December 20. Plaintiff had two

-10-

opportunities to comply with defendant's medical certification requirement for FMLA approval and failed to do so. Therefore, it was appropriate for defendant to issue plaintiff two attendance infractions pursuant to its policy.

Plaintiff fails to make out a prima facie case of FMLA interference because she has not established the third element. Defendant's actions were not related to plaintiff's FMLA requests. Plaintiff failed to comply with defendant's attendance policy, which is a legitimate reason for imposing infractions and/or termination that does not interfere with plaintiff's right to take FMLA leave. Therefore, defendant's motion for summary judgment on plaintiff's FMLA interference claim is granted.

### B. Plaintiff's Retaliation Claim

Plaintiff claims that defendant retaliated against her for filing a workers compensation claim in violation of Kansas law. Because the court grants defendant's motion for summary judgment on plaintiff's federal FMLA claim, see supra, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state claim. 28 U.S.C. § 1367(c)(3). Therefore, plaintiff's state retaliation claim is dismissed, without prejudice.

### IV. CONCLUSION

Defendant's motion for summary judgment (Doc. 73) is granted for the reasons stated more fully herein. The clerk is directed to enter judgment for defendant pursuant to Rule 58.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously

misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>  15th  </u> day of January 2010, at Wichita, Kansas.

<u>s/ Monti Belot                    </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE